# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JASON THOMAS,

     Plaintiff,

     v.

CITY OF ANNAPOLIS, et al.,

     Defendants.

Civil No.: BPG-16-3823

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Jason Thomas ("Thomas," or "plaintiff") brings this employment discrimination action against defendants City of Annapolis, Maryland ("City"), City of Annapolis Police Department ("APD"), and APD Chief Michael Pristoop ("Chief Pristoop"),[1] (collectively, "defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1983, based on a series of events which resulted in his termination from his position as a police officer with APD. Currently pending before the court are: (1) Defendants' Motion for Summary Judgment ("Defendants' Motion") (ECF No. 51); (2) Plaintiff's Opposition to Defendants' Motion ("Plaintiff's Opposition") (ECF No. 54); and (3) Defendants' Reply in Further Support of Its Motion for Summary Judgment ("Reply") (ECF No. 52). A hearing was held on February 13, 2018. (ECF No. 47). After the hearing, the court reopened discovery to allow for additional discovery and asked for supplemental briefing on the

---

[1] Chief Pristoop is only named in Count VII. For ease of reference, however, the term "defendants" is used throughout this opinion although the only defendants named in the remaining counts are the City and APD.

results of the additional discovery. (ECF No. 48). These supplemental briefs were also considered in resolving this Motion. (ECF Nos. 55 and 60).[2] The issues have now been fully briefed, and no additional hearing is necessary. Loc. R. 105.6. For the reasons stated below, Defendants' Motion (ECF No. 51) is granted.

## I.    BACKGROUND

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case. Scott v. Harris, 550 U.S. 372, 378 (2007).

Plaintiff was hired by APD on February 12, 2013. (ECF No. 51-7). On March 9, 2014, plaintiff sustained an injury to his left knee and lower back while on the job. (ECF No. 54 at 2, ECF No. 54-4). Plaintiff sought treatment from Dr. Joel Fetcher for these injuries. (ECF No. 54-4). On April 24, 2014, Chief Michael Pristoop assigned plaintiff to the "Administrative Support/Medical" section, also known as light duty work. (ECF No. 54-5). Dr. Fletcher performed surgery on plaintiff's knee on June 10, 2014. (ECF No. 51-14). Plaintiff returned to light duty on August 12, 2014. (ECF No. 51-1 at 3).

On November 10, 2014, Dr. Mark Rosenthal conducted an independent medical examination ("IME") of the plaintiff, in connection with plaintiff's workers' compensation request from the March 9 injury, to determine whether plaintiff could return to full duty. (ECF No. 51-9). Dr. Rosenthal concluded that plaintiff could return to work "full time, full duty, limited only by his knee" and that "[t]here is 0% impairment due to the injury of March 9, 2014." Id. On April 29, 2015, plaintiff had a follow up appointment with Dr. Fetcher during which the

---

[2] Because the parties' pleadings refer to non-party comparators, they have filed both sealed (ECF Nos. 49, 50, 55, 58, 59) and unsealed versions of their papers which only differ as to specific mention of the comparators' name. References herein are to the unsealed pleadings.

doctor recommended plaintiff undergo a functional capacity evaluation ("FCE") to better determine his functional limitations, determine if a second surgery was necessary, and assess plaintiff's continued pain and difficulty post-surgery.  (ECF No. 1-7).

On May 13, 2015, while still on light duty, plaintiff filed an application with the City's Human Resources Director, Mr. Paul Rensted, for a service-connected disability retirement. (ECF No. 51-12).  On May 18, 2015, Dr. Stanley Friedler conducted a second IME of the plaintiff in connection with plaintiff's application for a service-connected disability retirement. (ECF No. 51-14).  Dr. Friedler was provided with all of plaintiff's medical records and concluded that plaintiff "is able to work . . . [but] he should avoid squatting and kneeling, when possible."  Id.  Two days later, on May 20, 2015, plaintiff returned to Dr. Fetcher complaining of continued pain and difficulty in his left knee.  (ECF No. 59-4).  Dr. Fetcher recommended that plaintiff be restricted "on a permanent basis to light duty work with no standing or walking more than 30 minutes without a break."  Id.

On June 2, 2015, Mr. Rensted denied plaintiff's application for a service-connected disability retirement because he did not meet the criteria under Annapolis City Code.  (ECF No. 51-16).  Mr. Rensted informed Chief Pristoop and Captain Amoia that plaintiff had undergone an IME, that his application for disability retirement had been denied, and that Dr. Friedler had cleared plaintiff to return to full duty work.  (ECF No. 51-19).  On June 3, 2015, Captain Amoia and Lieutenant Brian Antal met with plaintiff to discuss the results of his IME, his disability application, and his returning to work.  Id.  Based on the results of the IME and Mr. Rensted's denial of plaintiff's disability retirement application, plaintiff was ordered to return to work on June 7, 2015.  Id.  Plaintiff, however, did not feel he was ready to return to full duty work and voiced these concerns at this meeting.  Id.  Due to minor requalification issues, plaintiff returned

to work on June 9, 2015 and reinjured his knee that day getting into his patrol car.  Id.  Plaintiff returned to light duty thereafter.  (ECF No. 51-20).

On June 11, 2015, plaintiff filed an appeal of Mr. Rensted's decision denying his disability retirement application with the Annapolis City Public Safety Disability Retirement Board.  (ECF No. 51-22).  On July 1, 2015 a conference call took place between Mr. Rensted, Chief Pristoop, Captain Amoia, Lieutenant Antal, and Mary O'Brien, the City's Risk Analyst, to discuss plaintiff's situation.  (ECF No. 51-23).  It was decided plaintiff would be offered the role of Police Records Specialist, which plaintiff had been doing while on light duty, to allow plaintiff to remain employed without impacting his reported physical limitations.  Id.  On July 7, 2015, Chief Pristoop and Lieutenant Antal met with plaintiff to offer him the vacant position of Police Records Specialist.  (ECF No. 51-25).  They explained that while this job was at a lower grade than his current role as police officer, plaintiff was being offered the role at the highest grade possible for the position so he could remain close to the grade he had as a police officer. Id.

On July 20, 2015, plaintiff declined the offer of Police Records Specialist in a meeting with Captain Amoia and Corporal Justin Klinedinst.  (ECF No. 51-26).  Captain Amoia informed plaintiff that the City could not continue to employ plaintiff in a light duty position.  Id.  Captain Amoia informed plaintiff he could use up any remaining paid leave time or that he could go on leave without pay because the most recent injury was not covered as a new work related injury, because it was related to plaintiff's first injury on March 9, 2014.  Id.  Plaintiff asked how much leave time he had available, which Captain Amoia provided, and then the meeting concluded. Id.  Plaintiff was on FMLA leave from July 21, 2015 to October 13, 2015.  (ECF No. 51-27).

Plaintiff also applied for and received short term disability payments from August 4, 2015 to November 8, 2015. (ECF No. 51-28).

On October 20, 2015, plaintiff filed a charge of discrimination with the Maryland Commission on Civil Rights ("MCCR") against the APD, alleging discrimination on the basis of race and disability, as well as retaliation. (ECF No. 51-29). Plaintiff requested that this charge also be filed with the Equal Employment Opportunity Commission ("EEOC"). Id. On October 26, 2015, Dr. Leslie Matthews conducted a third IME of plaintiff to get an updated medical evaluation of plaintiff for his workers' compensation claim from the second injury. (ECF No. 54-11). Dr. Matthews concluded that plaintiff was not capable of returning to full duty police work due to his knee and that he should avoid running, prolonged standing, climbing hills or stairs, squatting, stooping or kneeling.[3] Id. On April 29, 2016, plaintiff's appeal of Mr. Rensted's decision denying his disability retirement application was affirmed by the Public Safety Disability Retirement Board of the City of Annapolis. (ECF No. 51-31).

In an effort to obtain updated medical information and doctors' notes while plaintiff was on leave, Lieutenant Brian Antal, per his affidavit, called plaintiff six times (November 5, 2015; November 23, 2015; January 11, 2016; February 11, 2016; May 13, 2016; and May 31, 2016) and left a voicemail each time. (ECF No. 51-32). None of his calls were returned. Id. On November 23, 2015, Ms. Kimberly Ellis, the Police Administrative Specialist, sent plaintiff an email requesting current medical documentation. (ECF No. 51-33). Defendants allege plaintiff never responded to this email and plaintiff has offered no proof that he did. (ECF No. 51-1 at 9–10). On November 24, 2015 and January 12, 2016, Captain Amoia spoke with plaintiff during the appeal hearings before the Public Safety Disability Retirement Board of the City of

---

[3] As discussed later in this opinion, the denial of disability by Mr. Rensted preceded this IME. Thus, it was not considered when plaintiff's application for service-connected disability retirement was decided.

Annapolis. (ECF No. 51-34). Captain Amoia informed plaintiff that he was still an APD employee and that he was required to provide the department with updated information concerning his physical status for departmental needs. Id. There is no evidence of record that plaintiff ever responded to any communications from the APD, provided the APD with any updated medical information, or communicated with the APD at any time after the interaction with Captain Amoia in January 2016.

On June 13, 2016, Chief Pristoop sent plaintiff a notice of termination of employment with the City effective July 1, 2016. (ECF No. 51-35). The stated reason for termination was unsatisfactory work performance in connection with plaintiff's "unwillingness to return to work as a police officer" and refusal to contact or return communications from his superiors. Id. On August 26, 2016, the EEOC issued a Notice of Right to Sue to plaintiff. (ECF 1-8, at 4). Plaintiff filed the instant case before this court on November, 28, 2016. (ECF No. 1).[4]

In the Amended Complaint, plaintiff alleges that he suffered race and disability based employment discrimination as well as retaliation. (ECF No. 16 at 14–24). Specifically, plaintiff alleges that the decisions to deny him service-connected disability retirement and to deny his request for a functional capacity evaluation ("FCE")[5] were racially motivated as he is African American and that comparable Caucasian officers are not denied such requests. Id. at 14. Plaintiff contends that Caucasian officers receive better treatment in the disability retirement application review process because defendants afford greater weight to the opinions of Caucasian officers' treating physicians than to the opinions of African American officers' treating

---

[4] On January 3, 2017, plaintiff filed a second charge of discrimination with the MCCR on the basis of age and race. (ECF No. 51-35).

[5] Plaintiff has failed to offer any evidence proving that an FCE request was made, or when it was made. The only evidence plaintiff offers regarding an FCE are statements by his doctor that "we are going to get him a functional capacity evaluation." (ECF No. 1-7). More importantly, plaintiff has made no attempt to establish how a refusal to approve an FCE was causally related to alleged racial discrimination against him, which is required for establishing a prima facie case.

physicians.  Id.  More specifically, plaintiff alleges that, when reviewing his application for disability retirement, defendants ignored the diagnosis and recommendations of his treating physician, yet gave more weight to the opinions of the treating physicians of the Caucasian officers when reviewing their applications.  Id.  Plaintiff alleges that defendants discriminated against him on the basis of his disability and failed to properly accommodate him.  Id. at 16–17. Finally, plaintiff alleges that defendants retaliated against plaintiff by not approving his FCE request, ignoring his treating physician's recommendations when denying his retirement disability, placing plaintiff on leave without pay, and terminating him in violation of Title VII and the ADA.  Id. at 18.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315–16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an

essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299–300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. Anderson, 477 U.S. at 252.

III. **DISCUSSION**

A. **Race Discrimination in Violation of Title VII**

Count I of plaintiff's Amended Complaint alleges the City and APD discriminated against him on the basis of his race in violation of Title VII. (ECF No. 16 at 14–15). Discrimination under Title VII may be proved either by direct or indirect evidence of discrimination or by utilizing the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas

burden-shifting framework, the plaintiff must first establish a prima facie case for discrimination. Id. If the plaintiff proves a prima face case, the burden shifts to the employer to produce evidence of a non-discriminatory, legitimate reason for the action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011). If the employer provides such a reason, the burden shifts back to the plaintiff to prove that defendant's reason was pretext for unlawful discrimination. Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e–2(a). In his Amended Complaint, plaintiff asserts that he was discriminated against on the basis of his race when defendants ignored his treating physicians' opinions in connection with the review of his application for a service-connected retirement disability, when they placed him on leave without pay, and when they terminated him. (ECF No. 16 at 14). Plaintiff does not claim he has direct or indirect evidence of discrimination, and, thus, he relies on the McDonnell-Douglas framework. (ECF No. 54 at 13). In order to prove a prima facie case of discrimination, plaintiff must prove: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). In this case, it is undisputed that plaintiff, an African American male, is a member of a protected class. It is also undisputed that he suffered an adverse employment action when he was placed on administrative leave without pay and, ultimately, when he was terminated.[6] Thus, elements one and three are satisfied.

---

[6] Plaintiff argues that the denial of disability retirement constitutes an adverse employment action. Plaintiff offers no legal support for this proposition. Defendants briefly argue that a denial of disability retirement does not

As to the second factor, whether plaintiff was satisfactorily performing his job, plaintiff provides evidence of positive employee reviews from earlier in his employment with the City. (ECF No. 54-15). Plaintiff, however, misconstrues the time frame applicable in analyzing this element. The time frame relevant to assessing the employee's performance is "at the time of the adverse employment action," not earlier in the employee's employment history. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Here, the relevant time frame for the two adverse employment actions were when plaintiff: (1) was placed on administrative leave without pay and (2) was terminated. Between November 2015 and June 2016, the dates of the two adverse employment actions, plaintiff was on administrative leave without pay, but still employed by the City. (ECF No. 51-25; 51-27; 51-28). Defendants attempted to contact plaintiff on multiple occasions to receive updates on plaintiff's status and get updated medical documentation from plaintiff. (ECF No. 51-32; 51-33; 51-34). Defendants left multiple voicemail messages, emailed plaintiff several times, and reminded plaintiff in person at his disability appeal hearing of the need to stay in contact with the City. Id. None of the messages were returned. (ECF No. 51-1 at 15). Defendants maintain that during this time period, plaintiff was not meeting defendants' legitimate expectations. (ECF No. 51-1 at 13–16).

Plaintiff contends that there was "no legitimate basis" for these repeated communications, that defendants were informed to communicate through plaintiff's counsel, that plaintiff had

---

constitute an adverse employment action. (ECF No. 52 at 9). An adverse employment action "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " Hoyle, 650 F.3d at 337 (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999). Thus, it does not appear that a denial of disability retirement benefits constitutes an adverse employment action. Both parties, however, thoroughly discuss whether the comparators are similarly situated regarding the disability retirement process, and plaintiff summarily asserts, without discussion, that the comparators are relevant to all adverse actions at issue here. While the parties' analysis on this issue is confusing at best, the court will fully discuss the comparators identified by plaintiff.

never received a poor performance review, and that any failure to return phone calls "could not be considered unsatisfactory performance." (ECF No. 51-1 at 21). Plaintiff's claim of satisfactory performance "cannot establish a genuine issue as to whether [plaintiff] was meeting [his employer's] expectations." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960−61 (4th Cir. 1996)). It is the perception of the employer, not the employee, that matters. Id. As a result, plaintiff's own claim of satisfactory performance is insufficient to generate a factual issue on this second element of a prima facie case. See Morrall v. Gates, 370 Fed. App'x 396, 398 (4th Cir. 2010). In Morrall, an African American female employee sued her former employer, the Department of Defense, for race discrimination in connection with her termination. Id. at 398. The district court granted summary judgment, and the Fourth Circuit affirmed. Id. The main issue on appeal was whether the district court correctly determined that plaintiff failed to prove that she was performing her job at a satisfactory level at the time she was terminated. Id. The Fourth Circuit reiterated that "[w]hether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [plaintiff's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." Id. Here, as in Morrall, plaintiff has failed to satisfy the second element because he cannot establish a genuine issue as to whether he was satisfactorily performing his job at the time of the adverse employment actions. Thus, plaintiff cannot establish a prima facie case of race discrimination.

Although the inquiry could end here, the court, in light of the extensive discussion by the parties, turns to an analysis of the fourth and final element of a prima facie case of race discrimination, that plaintiff was treated differently from similarly situated employees outside the protected class. At the outset, it should be noted that this issue was the subject of supplemental

discovery and briefing by the parties. As detailed in an earlier opinion, the parties' initial summary judgment papers did not include a discussion of comparators because defendant had not produced discovery regarding comparators. (ECF No. 48 at 3–7). The court ordered that supplemental discovery regarding comparators be conducted and that supplemental briefs be filed by the parties regarding the comparator discovery. (Id. at 8–10) Plaintiff's supplemental brief addressing the comparators focuses on the alleged disparate treatment between plaintiff and the comparators as it relates to the denial of disability retirement which, as noted above, likely does not constitute an adverse employment action. Plaintiff does not detail any disparate treatment between the plaintiff and the comparators as it relates to plaintiff being placed on leave without pay and or being terminated, the two adverse employment actions at issue in this case. Plaintiff's lack of analysis on this issue makes it both difficult to discern the nature of plaintiff's claims and challenging to discuss the comparator evidence within the applicable legal framework. Notwithstanding these challenges, an analysis of plaintiff's proffered comparator evidence clearly reveals that plaintiff was not treated differently from similarly situated employee outside the protected class.

When analyzing the fourth factor, plaintiff need not point to a similarly situated comparator, as a matter of law, to succeed on a claim based upon discrimination. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003). But when plaintiff's allegations, as here, are based "completely upon a comparison to an employee from a non-protected class . . . the validity of their prima facie case depends upon whether that comparator is indeed similarly situated." Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258 (1981)). A plaintiff, therefore, must show that he or she is similar in *all relevant aspects* to their comparators. See Haywood,

387 Fed. App'x at 359 (emphasis added). This type of showing by plaintiff would "include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)); see also Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination."), aff'd, 553 U.S. 442 (2008). Notably, "if different decision makers are involved, employees are generally not similarly situated." Johnson v. Baltimore City Police Dept., Civil No. ELH-12-2519, 2014 WL 1281602, at *20 (D. Md. Mar. 27, 2014) (quoting Forrest v. Transit Mgmt. of Charlotte, Inc., 245 Fed. App'x 255, 257 (4th Cir. 2007)).

As noted above, plaintiff fails to address race discrimination with respect to the adverse employment actions of being placed on leave without pay and being terminated. Plaintiff briefly mentions these actions in his Amended Complaint, but does not make any argument, or offer any evidence, regarding race discrimination as it relates to these actions. Instead, the focus of plaintiff's argument is that he was treated differently from similarly situated individuals outside the protected class as it relates to Mr. Rensted's decision to deny plaintiff's request for disability retirement. Accordingly, the court will address plaintiff's claims in this context.

In support of his claim, plaintiff alleges that there are Caucasian comparators who are similarly situated in all relevant respects to him. (ECF No. 54 at 23–25). Plaintiff asserts these comparators were treated more favorably than plaintiff was treated with respect to whether they received service-connected disability retirements. Id. Plaintiff names as comparators: Officer A,

Officer B, Officer C, and Officers D, E, and F as Caucasian officers who were granted a service-connected a disability retirement and/or were not terminated or placed on leave without pay as a result of their injuries. Id. A review of the specifics regarding these "comparators," however, clearly reveals that they are not similarly situated to plaintiff.

The first alleged comparator, Officer A, held a different position than plaintiff in that he was a supervisor, who had been employed by defendant for 31 years. (ECF No. 51-27). Officer A had the ability to hire and fire and was the final decision maker in disciplinary matters. (ECF No. 51-27). Contrary to plaintiff's claim, Officer A was not placed on permanent light duty, but was reassigned to a different supervisory position. (ECF No. 60 at 3). Plaintiff, an Officer First Class, was a front line police officer with no managerial duties or experience. (ECF No. 1-2). See Trusty v. Maryland, 28 Fed. App'x 327, 329 (4th Cir. 2002) (supervisor and subordinate not similarly situated). Thus, Officer A is not similarly situated to plaintiff.[7]

As to alleged comparators Officers C, D, and E, plaintiff does not address why these officers are similarly situated to plaintiff other than noting that they were all the same rank and discussing their medical history as it relates to the retirement disability process and result. (ECF No. 54 at 25–26, ECF No. 55 at 2–7). The critical distinction between these officers and plaintiff, however, is that a different Human Resources Director, not Mr. Rensted, made the decision to grant them service-connected disability retirement. (ECF No. 55 at 2–7). Thus, these officers are not similarly situated to plaintiff because a different decision maker was involved in determining whether their disability applications were granted. See Forrest v. Transit Mgmt. of

---

[7] Plaintiff also asserted in his opposition brief that Officer B is similarly situated to plaintiff because they both answered to the same supervisor, Officer A. (ECF No. 54 at 24). It appears that plaintiff has abandoned the argument that Officer B is a comparator because plaintiff has not included Officer B in his supplemental brief. (ECF No. 55). Presumably, that is because Officer B never filed a retirement disability application. (ECF No. 51-1 at 31).

Charlotte, Inc., 245 Fed. App'x 255, 257 (4th Cir. 2007) (employees not similarly situated if different decision makers involved).

On the other hand, Officer F, who plaintiff argues is similarly situated to him, had the same HR director, Paul Rensted, make the decision regarding her service-connected disability retirement application. (ECF No. 54 at 24). The notable distinction between Officer F and plaintiff, however, is that the physician who conducted Officer F's IME determined that she could not perform the physical duties required of an officer. (ECF No. 51-44). By contrast, the two doctors who performed plaintiff's IMEs concluded that plaintiff could return to work. (ECF Nos. 51-9, 51-14).[8] While "the court acknowledges that a similarly-situated comparator need not be [the] plaintiff's exact match," Haywood v. Gutierrez, No. 08-CV-981 (GBL), 2009 WL 1208111, at *6 (E.D. Va. Apr. 30, 2009), it cannot be said that Officer F and plaintiff are similarly situated. The decision whether to approve a disability application is necessarily dependent upon the IME conclusions, and the fact that Officer F and plaintiff had different IME results is a critical distinguishing fact. As a result, plaintiff has failed to identify a comparator who is similarly situated to plaintiff[9] and, accordingly, has failed to establish a prima facie case.[10]

Even if plaintiff could establish a prima facie case of discrimination, it must also be noted that the fact that plaintiff had two separate IMEs concluding that he could return to work, which

[8] Although a third IME of plaintiff conducted by Dr. Matthews concluded plaintiff could not return to full duty police work, this IME was completed almost five months after Mr. Rensted denied plaintiff's application for a service-connected disability retirement.

[9] Officer G is the only other individual for whom Mr. Rensted decided a disability application. (ECF No. 51-1 at 33). Like plaintiff, Officer G is an African American male who suffered a knee injury while at work. (ECF No. 51-17). The physician who conducted Officer G's IME determined that he could not perform the physical duties required of an officer, and Mr. Rensted subsequently approved his application for disability retirement. (ECF No. 51-47). So Officer G, like Officer F, but unlike plaintiff, had an IME supporting the conclusion that he could not return to work.

[10] As noted above, plaintiff has not identified any similarly situated comparators as it relates to his allegations of race discrimination in the context of being placed on administrative leave without pay and being fired.

supported Mr. Rensted's decision, also serves as evidence of a non-discriminatory, legitimate reason for the denial of disability benefits. Moreover, defendants have offered evidence of a legitimate, non-discriminatory reason for its employment actions against plaintiff regarding his status of being on leave without pay and being terminated. Regarding plaintiff's termination, defendants' legitimate, non-discriminatory reason for such action was because plaintiff refused to return to work or to communicate with his employer. (ECF No. 51-34). As discussed below regarding plaintiff's status as being on leave without pay, defendants did not formally decide to place plaintiff on leave without pay as any type of disciplinary measure or independent determination made by defendants. It was rather an administrative action taken in due course after plaintiff refused a different job, did not return to work otherwise, and his leave benefits were exhausted.

As the Fourth Circuit has stated "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quoting DeJarnette v. Cornin Inc., 133 F.3d 293, 299 (4th Cir. 1998)). To defeat summary judgment, "the plaintiff must show that the defendant's non-discriminatory explanation is 'unworthy of credence' or offer 'other forms of circumstantial evidence sufficiently probative' of discrimination or retaliation." Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F. Supp. 2d 637, 644 (D. Md. 2004) (citing Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004)). A plaintiff at the pretext stage "must present admissible evidence that is more than 'self-serving opinions or speculation.'" Kess, 319 F. Supp. 2d at 644 (citing McCain v. Waste Mgmt., Inc., 115 F. Supp. 2d 568, 574 (D. Md. 2000)). Here, plaintiff has offered no evidence or

argument to support the conclusion that the defendants' proffered reasons were a pretext for unlawful discrimination.

### B. Retaliation

Counts II and IV of plaintiff's Amended Complaint allege that the City and APD retaliated against plaintiff by not approving his FCE request, ignoring his treating physician's recommendations when denying his retirement disability, placing plaintiff on leave without pay, and terminating him, in violation of Title VII and the ADA. (ECF No. 16 at 15–16, 18–19). Retaliation claims brought under the ADA and Title VII are both analyzed under the Title VII standard. See A Society Without A Name v. Virginia, 655 F.3d 342, 352 (4th Cir. 2011) (citing authority). A prima facie case of retaliation requires proof that: (1) plaintiff engaged in a protected activity, (2) he suffered a material adverse action, and (3) a causal connection existed between the protected activity and the adverse action. Strothers v. City of Laurel, Maryland, No. 17-1237, 2018 WL 3321317, at *5 (4th Cir. July 6, 2018).

There is no dispute that plaintiff satisfies the first two elements. As to the first element, plaintiff filed charges with the MCCR and the EEOC which constitutes protected activity. See Nam v. 2012, Inc., Civil No. DKC-15-1931, 2016 WL 107198 (D. Md. Jan. 11, 2016) (filing MCCR and EEOC charges constitutes protected activity). With respect to the second element, plaintiff was placed on leave without pay and later terminated, both of which, as defendants concede, constitute material adverse actions for purposes of the second element. See White v. City of Annapolis, Civil No. JFM-13-1330, 2015 WL 5009853, at *5 (D. Md. Aug. 21, 2015) ("Actual termination . . . [is] clearly sufficiently adverse); Fink v. Richmond, Civil Action No. DKC-2007-0714, 2009 WL 3216117 at *10–*11 (D. Md. Sept. 29, 2009) (being placed on leave

without pay constitutes an adverse employment action). Thus, the relevant question is whether plaintiff can satisfy the third element.

In order to satisfy the third element, plaintiff must prove a causal connection between his protected activity and the adverse action. The Fourth Circuit has held that establishing a causal relationship at the prima facie stage "is not an onerous burden." Strothers, 2018 WL 3321317 at *11 (citing Burgess v. Brown, 466 Fed. App'x 272, 282 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima facie case of retaliation.") The Fourth Circuit in Strothers recently reaffirmed this point, stating that "[a]n employee may establish *prima facie* causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers, 2018 WL 3321317 at *11 (emphasis in original).

In this case, plaintiff's protected activity occurred on October 20, 2015[11] when he filed a charge of employment discrimination with the MCCR and EEOC.[12] (ECF No. 1-8). The City received a copy of plaintiff's charge on October 23, 2015, which, according to the MCCR, "shall serve as formal notice and service." (ECF No. 54-29). Given that the charge explicitly

---

[11] Plaintiff filed his second charge with the MCCR on January 3, 2017. (ECF No. 14-2). Because plaintiff had already been terminated when plaintiff filed his second charge, this protected activity cannot be considered for a retaliation claim because it happened after the material adverse action. See Gibson v. Marjack Co., Inc., 718 F. Supp. 2d 649, 655 (D. Md. 2010) ("plaintiff must prove that the protected activity preceded the adverse action").

[12] Plaintiff asserts in his Amended Complaint, but does not further elaborate in his papers, that he engaged in protected activity under the ADA, rather than Title VII, when he requested a Functional Capacity Evaluation ("FCE") and when he requested a transfer to the role of detective. Though a request for reasonable accommodations is a protected activity under the ADA for purposes of retaliation, see Haulbrook v. Michelin North America, 252 F.3d 696, 706 (4th Cir. 2001), the plaintiff has failed to offer any evidence proving such requests were made, or when they were made, which is required at the summary judgment stage. Regarding plaintiff's alleged request to transfer to the role of detective, defendants argue that plaintiff has offered no proof there was an available detective role at any point. (ECF No. 51-1 at 38). Defendants further note that the detectives must meet the same physical requirements as those of a police officer, and plaintiff has conceded that he could not perform the duties of being a police officer. Id. at 39; ECF No. 51-27. Nor has plaintiff has made any attempt to establish how these events were causally related to the adverse actions taken against him, which is required to establish a prima facie case.

references discrimination based on race, retaliation, and disability, it is clear that the City "either understood or should have understood" that plaintiff was engaging in protected activity. Strothers, 2018 WL 3321317 at *11.

In determining whether the City took adverse action against the plaintiff soon after learning of the charge he filed, "temporal proximity is sufficient to establish a causal connection at the *prima facie* stage." Strothers, 2018 WL 3321317 at *11 (emphasis in original). In cases "[w]here a plaintiff rests his case on temporal proximity alone, the temporal proximity must be very close." Penley v. McDowell County Board of Education, 876 F.3d 646, 656 (4th Cir. 2017). Here, the adverse actions taken against plaintiff were being placed on administrative leave on November 9, 2015 and being terminated on July 1, 2016. Plaintiff went on administrative leave without pay on November 9, 2015, which was only twenty days after he filed his charge with the MCCR and EEOC. The record, however, establishes that the decision to place plaintiff on administrative leave without pay was not made after he filed his charges of employment discrimination, but instead, had already been administratively predetermined.

As discussed above, on July 7, 2015, Chief Pristoop and Lieutenant Antal met with plaintiff to offer him the vacant position of Police Records Specialist. (ECF No. 51-25). At that meeting, plaintiff was advised as to his remaining annual and sick leave he could use. Id. When plaintiff declined the offer on July 20, 2015, plaintiff was advised that the City could not continue to employ plaintiff in a light duty capacity position, and he could use up any remaining paid leave time or that he could go on leave without pay because the most recent injury was not covered as a new work related injury. (ECF No. 51-26). Plaintiff asked how much leave time he had available, which Captain Amoia provided, and then the meeting concluded. Id. Plaintiff was on FMLA leave from July 21, 2015 to October 13, 2015. (ECF No. 51-27). Plaintiff also

applied for and received short term disability payments from August 4, 2015 to November 8, 2015. (ECF No. 51-28). Plaintiff was only placed on administrative leave the following day, November 9, 2015, because all available leave and benefits had been exhausted. Thus, defendants did not affirmatively decide to place plaintiff on leave without pay on November 9. Defendants noted that the decision to cease plaintiff's short term disability was made by Symetra, a third party plan administrator. (ECF No. 51-8). Thus, plaintiff was placed on administrative leave without pay as a result of his benefits clock running out, not as the result of any affirmative measure taken, or decision made, by defendants. In essence, the date on which plaintiff's leave would convert from paid to unpaid leave was predetermined the day plaintiff declined the Police Records Specialist offer. Accordingly, plaintiff has failed to offer proof of a causal connection between his protected activity and being placed on administrative leave without pay.

Plaintiff was terminated on July 1, 2016, eight months after he filed his charges of employment discrimination. Plaintiff relies on the temporal proximity between these two events to establish a causal connection between his protected activity and his termination. As the Fourth Circuit found in Penley, "eight to nine months is too distant to raise an inference of causation." Id. at 657; see also Booth v. Maryland, 337 Fed. App'x 301, 310 (4th Cir. 2009) (nine month lapse too remote to prove a causal connection alone); compare Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (two year span between protected activity and adverse action not close enough for temporal proximity), Pascual v. Lowe's Home Ctrs. Inc., 193 Fed. App'x 229, 233–34 (4th Cir. 2006) (three to four months not close enough for temporal proximity), King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (two and a half month space between protected activity and adverse action held not close enough for temporal proximity);

with Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989 (four month span close enough for temporal proximity), Jenkins v. Gaylord Entertainment Co., 840 F. Supp. 2d 873, 881 (D. Md. 2012) (two-day span between protected activity and adverse action close enough for temporal proximity). Here, the temporal proximity between plaintiff's protected activity and his termination is not close enough to establish a prima facie case of retaliation under Title VII.

Even if plaintiff had proven a prima facie case as it relates to being placed on administrative leave without pay or being terminated, defendants have produced evidence of a non-discriminatory, legitimate reason for said actions. See White, 2015 WL 5009853 at *4 (after plaintiff proves prima facie case, burden shifts back to employer to provide non-discriminatory reason for the action). As discussed above, defendants assert that they could not offer plaintiff permanent light duty work, plaintiff refused to return to work as a police officer, and plaintiff declined the records specialist position offered to him. (ECF No. 51-24, 51-25). Plaintiff was only placed on administrative leave on November 9, 2015, because all available leave and benefits had been exhausted. (ECF No. 51-27, 51-28). With respect to plaintiff's termination, defendants assert that plaintiff was terminated because plaintiff refused to return to work or to communicate with his employer. (ECF No. 51-34). Because defendants have provided evidence of non-discriminatory reasons for their actions, the burden shifts back to the plaintiff to prove pretext. See White, 2015 WL 5009853 at *4. Again, plaintiff has failed to offer any evidence to prove pretext. Rather, plaintiff merely asserts, without proof, that defendants' reasons for firing him violated their own policy, that no other employees have been subject to discipline for the reasons identified in plaintiff's termination letter, and that employees outside the protected class have been treated better. (ECF No. 54 at 15). As discussed above, plaintiff has not offered any evidence to support these conclusory allegations. As the Fourth Circuit has stated, the "mere

knowledge on the part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons" for any adverse action taken by the employer. Williams, 871 F.2d at 457. Accordingly, summary judgment is GRANTED as to Counts II and IV.

### C. Disability Discrimination in Violation of ADA

Count III of plaintiff's Amended Complaint alleges the City and APD discriminated against him in on the basis of his disability by refusing his request for an FCE[13], ignoring his physician's recommendations, denying his disability retirement, placing him on leave without pay, and firing him in violation of the ADA. (ECF No. 16 at 16–18). Plaintiff also incorporates into his disability discrimination claim a claim for failure to provide reasonable accommodations. Plaintiff maintains that he could not return to work as a full duty police officer, but alleges that he could have performed a similar job with reasonable accommodations, such as being placed on permanent light duty or being placed in the position of detective.[14]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). In order to establish a violation of this section, a plaintiff must prove: "(1) that [he] has a disability, (2) that [he] is a 'qualified individual' for the employment in question, and (3) that [his] employer discharged [him] or took other adverse employment action because of [his] disability." Lacasse v. Didlake, Inc., 712 Fed. App'x 231, 238–39 (4th Cir. 2018).

---

[13] As previously noted, plaintiff has failed to offer any evidence proving such a request was made, or when it was made.

[14] As noted elsewhere in this opinion, there are multiple instances where there is a clear discrepancy between what plaintiff alleges in his Amended Complaint and what he discusses in his summary judgment papers. The request to be placed in the position of detective is an example. Plaintiff discusses it in his Amended Complaint (ECF No. 16 at 8–9) but fails to discuss it in his opposition brief. In his opposition, the only accommodation plaintiff discusses is the request to be placed on permanent light duty. (ECF No. 54 at 25–27).

Regarding the first factor, whether plaintiff has a disability for purposes of the ADA, plaintiff argues that he "clearly has a disability based upon his limitations which included bending, walking, climbing, kneeling, and prolonged standing." (ECF No. 54 at 26). Defendants concede that plaintiff has limitations in these areas, but argue that they are not substantially limiting enough to be considered a disability for purposes of the ADA. (ECF No. 51-1 at 36). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Plaintiff argues that his limitations substantially limit his major life activities. (ECF No. 54 at 26). To proceed under the "major life activities" disability prong, plaintiff must demonstrate that: (1) he has a physical or mental impairment; (2) that implicates a major life activity; and (3) has a substantial limitation. Heiko v. Columbo Savings Bank, F.S.B., 434 F.3d 249, 254 (4th Cir. 2006). Defendants concede that plaintiff has a physical impairment which affects the major life activities of walking and bending.[15] (ECF No. 51-1 at 36). Defendants maintain, however, that plaintiff cannot meet the third requirement in that his impairment does not substantially limit his ability to bend, walk, climb, kneel, or stand for a prolonged period of time.

In order to meet the ADA's "substantially limits" requirement, an impairment must interfere with a major life activity "considerabl[y]" or "to a large degree" and it must be "permanent or long-term." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 185 (2002). "Among the factors courts should consider in making the substantial limitation determination are the impairment's 'nature and severity' and 'expected duration.'" Heiko, 434 F.3d at 257 (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(ii)). Courts must engage in an individualized

---

[15] Major life activities include, among other things, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A).

inquiry focused on the particular plaintiff's limitations and any effects of corrective mitigation measures. Heiko, 434 F.3d at 258.

In this case, plaintiff has been cleared to resume full duty work by two doctors who conducted IMEs. (ECF No. 51-9, 51-14). Mr. Rensted then reviewed these IMEs, and other medical evidence, and concluded plaintiff was not disabled for purposes of his retirement disability application. (ECF No. 51-16). Mr. Rensted's decision was later affirmed by the Public Safety Disability Retirement Board. (ECF No. 51-31). Plaintiff was instructed to "avoid squatting and kneeling when possible." (ECF No. 51-14). Otherwise, there were no restricting limitations placed on plaintiff's abilities to bend, walk, climb, kneel, or stand for a prolonged period of time. Such "mild limitations are not significantly restricting" and the Fourth Circuit has "consistently held that similar restrictions are not evidence of a permanent impairment that substantially limits any major life activity under the ADA." Pollard v. High's of Baltimore, Inc., 281 F. 3d 462, 470–71 (4th Cir. 2002) (limitations to not lift more than 25 pounds or bend repetitively were mild and plaintiff did not offer sufficient evidence as to impairments' permanency that they would be substantially limiting under the ADA).

Plaintiff argues that Dr. Friedler, the second IME doctor, never concluded plaintiff could return to full duty work. (ECF No. 54-26). Defendants, however, note that Dr. Friedler was provided with the plaintiff's job description and required physical capabilities when he examined plaintiff and determined he could return to work. (ECF No. 52 at 16). Plaintiff also discusses the results of his IME with Dr. Matthews and the diagnosis from his treating physician, Dr. Fetcher. (ECF No. 54-26). Plaintiff notes how both doctors concluded he could not return to full duty work and thus, required an accommodation. Id. Plaintiff, however, offers no specific evidence to prove that his impairments are substantially limiting. Plaintiff offers no evidence on

the permanence or long term aspects of his impairments or how they "considerabl[y]" or "to a large degree" interfere with a major life activity. "Plaintiff[] cannot show that an impairment severely restricts a major life activity simply by submitting 'evidence of a medical diagnosis of an impairment.' Rather, they must offer evidence that the impairment causes substantial limitation in terms of their own experience." Bennett v. Kaiser Permanente, 931 F. Supp. 2d. 697, 709 (D. Md. 2013) (quoting Toyota, 534 U.S. at 198). Plaintiff fails to do that here. Thus, plaintiff cannot satisfy the first element for a claim of disability discrimination under the ADA.

Even if plaintiff could satisfy the first element, plaintiff has not proffered any evidence of the second element, that he is a "qualified individual" for the employment in question. Defendants assert that plaintiff is not a "qualified individual" under the ADA because plaintiff has acknowledged that he cannot, with or without a reasonable accommodation, perform the essential functions of being a police officer.[16] It is clear that the position of police officer is a physically demanding job. To that end, defendants have offered a "Position Vacancy Announcement" which summarizes the skills and abilities required of a police officer, along with examples of types of work performed by an officer. (ECF No. 1-2). The document includes a section covering the ADA and lists the "physical ability" needed as follows: "[a]bility to lift and/or move heavy objects or persons weighing from 150 to 300 pounds in the course of rescue activities; ability to physically restrain persons in the course of law enforcement activities; ability to give chase on foot in the course of law enforcement/criminal apprehension activities . . . ." Id.

A "qualified individual" with a disability under the ADA is someone "who, with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). Essential functions are those which "bear more than a marginal relationship to the job

---

[16] The statute requires that courts use the employer's judgment as to what functions of a job are essential. 42 U.S.C. § 12111(8).

at issue." Tyndall v. National Educ. Centers, Inc. of California, 31 F.3d 209, 212 (4th Cir. 1994). Based on the IMEs which concluded that plaintiff could return to work, the APD ordered plaintiff to return to work. (ECF No. 51-19). Plaintiff returned to work for a few hours, reinjured his knee, and has since asserted throughout this litigation that he cannot fulfill the physical duties of a police officer. The record is replete with plaintiff's own subjective statements and beliefs that he could not fully perform these "essential functions." In his Amended Complaint, plaintiff states that he could not perform the physical duties and requirements demanded of all police officers. (ECF No. 16 at 16–17). In his application for service based retirement disability, plaintiff stated he was "not now or in the foreseeable future capable of returning to work as a police officer." (ECF No. 51-12). Plaintiff reaffirmed this statement when he testified before the panel evaluating his disability application. (ECF No. 51-31). Plaintiff takes the position that his impairment is serious and should warrant his disability retirement, while simultaneously arguing that, with some level of accommodation, he can perform this job. These contrary positions cannot be reconciled.

As noted in Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999):

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id. at 807. Here, plaintiff has offered no explanation for this inconsistency and, therefore, has failed to create a factual issue sufficient to defeat summary judgment on this claim. See Dawson v. Baltimore County, Civil No. JFM-16-692, 2016 WL 4089562 (D. Md. Aug. 1, 2016)

(employee unable to perform essential functions at the time of adverse action is not a qualified individual).[17]

Even if plaintiff had proven a prima facie case of disability discrimination, defendants have produced evidence of a non-discriminatory, legitimate reason for said actions. See Jacobs v. N.C. Administrative Office of the Courts, 780 F.3d 562, 575. As discussed above in the context of plaintiff's race discrimination claim, defendants have offered evidence that they could not offer plaintiff permanent light duty work, plaintiff refused to return to work as a police officer, and plaintiff declined the records specialist position offered to him. (ECF No. 51-24, 51-25). Plaintiff was thereafter on FMLA leave from July 21–October 13, 2015 and was on short term disability from August 4–November 8, 2015. (ECF No. 51-27, 51-28). Plaintiff was only placed on administrative leave without pay the following day, November 9, 2015, because all available leave and benefits had been exhausted. Id. With respect to plaintiff's termination, the City has offered that it terminated plaintiff because plaintiff refused to return to work or to communicate with his employer. (ECF No. 51-34). Because defendants have provided evidence of non-discriminatory reasons for their actions, the burden shifts back to the plaintiff to prove pretext. See Jacobs, 780 F.3d at 575–76. Plaintiff has failed to offer any evidence to prove pretext. As a result, his claim fails.

Finally, in his opposition, plaintiff argues that defendants failed to accommodate him under the ADA. (ECF No. 54 at 26–29). Plaintiff alleges that although he could not return as a full duty police officer, defendants should have accommodated his disability by placing him on modified or light duty. Id. at 27. Plaintiff has not offered any evidence that any such position existed. "An employer is not obligated to provide an employee the accommodation he or she

---

[17] Nor has plaintiff offered any evidence to prove the third element of a prima facie case, that defendants took adverse employment actions against plaintiff because of his disability.

requests or prefers; the employer need only provide some reasonable accommodation." Crawford v. Union Carbide Corp., No. 98-2448, 1999 WL 1142346 at *8 (4th Cir. 1999). Here, defendants have noted that there is no permanent light duty position. (ECF No. 52 at 14). And in any event, permanent light duty is not a reasonable accommodation. Searls v. Johns Hopkins Hospital, 158 F. Supp. 3d 427, 436 ("a reasonable accommodation does not require an employee to…assign an employee permanent light duty.") (D. Md. 2016) (quoting Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 Fed. App'x 314 (4th Cir. 2011)).[18] Contrary to plaintiff's assertions, defendants provided plaintiff with many accommodations to include providing him with sixteen months of light duty work, keeping his position open for over two years while he was on light duty and on leave, providing him with various forms of leave, and offering plaintiff the position of Police Records Specialist. (ECF No. 51-1 at 40–42). For the foregoing reasons, summary judgment is granted as to Count III.

### D. Section 1981 and 1983 Race Discrimination

Counts V, VI, and VII of plaintiff's Amended Complaint allege discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against the City, APD, and Chief Pristoop in his individual capacity. (ECF No. 16 at 19–22). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). This section prohibits employment discrimination on the basis of race. See Weathersbee v. Baltimore City Fire Dept., 970 F. Supp.

---

[18] Plaintiff asserts in his Amended Complaint, but does not discuss in his papers, that defendants refused to reassign plaintiff to a detective position. (ECF No. 16 at 17). As noted by defendants, however, there is no evidence that there was an available detective position at any point. (ECF No. 51 at 38; ECF No. 51-27). Defendants further note that detectives must satisfy the same physical requirements as those of a police officer, and the same requirements plaintiff has conceded that he could not perform. Id. at 39; ECF No. 51-27.

2d 418 (D. Md. 2013). Though the claim is brought under § 1981, it is clear that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989)).

When the party sued for discrimination under § 1983 is a municipality, such as the City of Annapolis[19], the municipality may be liable "where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom." Smith v. Ray, 409 Fed. App'x 641, 650 (4th Cir. 2011). Further, a municipality is not liable for mere "isolated incidents of unconstitutional conduct by subordinate employees.... Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003).

Here, plaintiff maintains that the City has a "clear custom of treating white officers more favorably than black officers. The procedures used for imposing discipline, determining qualifications for disability retirement . . . shows a clear pattern of discriminatory treatment in favor of white officers." (ECF No. 54 at 16). Similarly, in plaintiff's Amended Complaint, he states "[d]efendants have a custom or policy of engaging in discrimination against African Americans." (ECF No. 16 at 21). Plaintiff offers no factual or evidentiary basis to prove that such a policy or custom exists. Even if Plaintiff had offered such evidence, the theory of municipal liability under § 1983 requires "numerous particular instances of unconstitutional conduct in order to establish a custom or practice." Lytle, 326 F.3d at 473. In the absence of

---

[19] The City of Annapolis, as a unit of local government, is a person subject to suit under § 1983. Sparrow v. City of Annapolis, Civil No. WMN-16-1394, 2017 WL 3413596 (D. Md. Aug. 9, 2017) (excessive force and battery claims brought against City of Annapolis). Defendants appear to acknowledge that the APD is also subject to this suit and note that "[p]ursuant to the City charter, the [APD] is duly constituted police agency that operates within the City." (ECF No. 51-1 at 2).

such evidence, summary judgment must be granted as to Counts V and VI against the City and APD.

Count VII alleges discrimination in violation of § 1983 against Chief Michael Pristoop in his individual capacity only. Plaintiff states that Chief Pristoop "terminated [plaintiff] without any policy based authority to do so." (ECF No. 54 at 16). The termination, according to plaintiff, violated plaintiff's right to challenge disciplinary actions under the Law Enforcement Officer's Bill of Rights ("LEOBR"). Id. Plaintiff also generally alleges, without further discussion, the chief's involvement in the decision to deny plaintiff's FCE request, deny his retirement disability application, place him on leave without pay, and terminate him as proof of the chief's individual involvement in the discrimination against plaintiff. Id.

"While individual liability for supervisors exists under [ ] §1981 and [ ] §1983, it only applies where the act or omission resulting in the infringement of rights was intentionally caused by the supervisor and where the Plaintiff makes an affirmative showing of that fact." Brown v. Baltimore Police Dept., Civil No. RDB-11-136, 2011 WL 6415366, at *7 (D. Md. Dec. 21, 2011). For the reasons noted elsewhere in this opinion, plaintiff has not presented any evidence that Chief Pristoop or, for that matter, any other employee of the City or APD engaged in any intentional acts which infringed upon plaintiff's constitutional rights. Plaintiff's reliance on the LEOBR is misplaced because officers are not entitled to a hearing under the LEOBR when they are terminated for poor work performance. See Cancelose v. City of Greenbelt, 75 Md. App. 661, 666−67 (1988) (officer was not entitled to LEOBR hearing in connection with dismissal for unsatisfactory work performance, which did not result from investigation or interrogation). Accordingly, plaintiff has not articulated a basis for Chief Pristoop's liability under Section 1983. Therefore, Defendants' Motion is GRANTED as to Count VII.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion (ECF No. 51) is GRANTED.  A separate

order will be issued.


Date:  September 4, 2018             _____/s/_____
                                     Beth P. Gesner
                                     Chief United States Magistrate Judge